INTERNET DOORWAY, INC. d/b/a
Netdoor And Netdoor.Com,
Plaintiff,

v.

Sidney PARKS; Stan Parker; Keith
Peters; Connie Davis; and John
Does 1 Through 4, Defendants.

CIV. A. No. 3:00CV405BN.

United States District Court,
S.D. Mississippi,
Jackson Division.

April 9, 2001.

David S. Humphreys, Watson & Jernigan, P.A., Jackson, MS, Eddie J. Abdeen, Eddie J. Abdeen, Attorney, Laurel, MS, for Internet Doorway, Inc. dba Netdoor dba Netdoor.com.

G. Todd Burwell, Latham & Burwell, PLLC, Jackson, MS, for John Does 1–4 Connie Davis, Sidney Parks, Stan Parker, Keith Peters.

## *OPINION AND ORDER*

BARBOUR, District Judge.

This cause is before the Court on the Motion to Dismiss for Lack of Personal Jurisdiction of Defendant Connie Davis. Having considered the Motion, the Response, and the Rebuttal, the Court finds that the Motion is not well taken and should be denied.

### I. Factual Background and Procedural History

Plaintiff Internet Doorway ("Internet Doorway") has filed suit against Defendants, including Connie Davis ("Davis"), a resident of Texas, asserting claims for violations of the Lanham Act, 15 U.S.C. § 1125, as well as for the state law tort of trespass to chattels. According to Internet Doorway, Davis sent an unsolicited e-mail[1] to persons all over the world, including Mississippi residents, advertising a pornographic web-site. Internet Doorway further alleges that on the e-mail sent by Davis, she falsified the "from" header to make the e-mail appear to have been sent from an Internet Doorway account. Internet Doorway further maintains that many of the recipients of Davis' e-mail complained to Internet Doorway and to their own internet service providers. Internet Doorway argues that because of the e-mail, the goodwill of Internet Doorway in the community has been damaged, and the personnel of Internet Doorway expended time and resources individually responding to every complaint. Currently before the Court is the Motion to Dismiss of Davis. The Court will now consider the Motion.

### II. Analysis

Defendant Davis asserts that she should be dismissed from this action on the basis that this Court lacks personal jurisdiction over her in this matter. Before analyzing the issue of personal jurisdiction, the Court notes that there are apparently two independent grounds for subject matter jurisdiction in this case. As Internet Doorway has alleged a violation of the Lanham Act, 15 U.S.C. § 1125, this court has federal question jurisdiction based upon 28 U.S.C. § 1331. In addition, in regard to the state tort claim of Internet Doorway for trespass to chattels, there appears to be complete diversity between the parties. Although the *ad damnmum* clause of the Complaint does not seek a specific monetary amount in damages, it is

---

1. It is not clear from the facts presented to the Court whether there was a single e-mail advertisement that was repeatedly sent to numerous recipients, or whether there were several different e-mail advertisements that were sent to numerous recipients. While this distinction is not important to the substantive reasoning of the Court, it does raise a question as to whether the term "e-mail" or "e-mails" should be used, and whether the term "e-mails" is even grammatically correct, considering the term "mails" is not. Without answering this question, in order to simplify matters, when the Court refers in the singular to the "e-mail" allegedly sent by Davis, the Court intends to include the entirety of the solicitations sent by Davis via e-mail which Internet Doorway alleges were violative of law.

assumed that Internet Doorway is seeking damages in excess of $75,000, exclusive of costs and interest, as the Complaint of Internet Doorway asserts that this Court has diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332. Accordingly, this Court apparently has both federal question and diversity of citizenship jurisdiction over this matter. Thus, as Defendant Davis has alleged a lack of personal jurisdiction, the Court must consider whether the requirements for personal jurisdiction differ with regard to either federal question or diversity of citizenship jurisdiction.

■ In *Burstein v. State Bar of Cal.*, 693 F.2d 511 (5th Cir.1982), the United States Court of Appeals for the Fifth Circuit addressed the requirements for personal jurisdiction in a federal question case. In interpreting Rule 4(e) of the Federal Rules of Civil Procedure, the court held that in federal question cases where the federal statute in question does not provide for service of process, "a federal court, even in a federal question case, can use a state long-arm statute only to reach those parties whom a court of the state could also reach under it." *Id.* at 514. As the Lanham Act does not provide for service of process in this situation, this Court must look to the Mississippi long-arm statute in order to determine whether personal jurisdiction exists over Davis. Thus, in a situation such as this, there is no difference in the requirements for personal jurisdiction whether there is a federal question or a diversity of citizenship basis for subject matter jurisdiction.

■ Accordingly, in an action based on diversity, two requirements must be met in order for a federal court to exercise personal jurisdiction over a non-resident defendant. First, the requirements of the long-arm statute of the state in which the court sits must be satisfied. Second, such

exercise of personal jurisdiction must not offend traditional notions of fair play and substantial justice under the Due Process Clause of the Fourteenth Amendment. *Rittenhouse v. Mabry*, 832 F.2d 1380, 1382 (5th Cir.1987); *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1264–65 (5th Cir.1983); *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 489 (5th Cir.1974).

Turning to the first issue of the analysis, the Mississippi long-arm statute allows a court to exercise personal jurisdiction over an out of state defendant who: (1) makes a contract with a resident of this state to be performed in whole or in part by any party in this state; (2) commits a tort in whole or in part in this state against a resident or nonresident of this state; or (3) does any business or performs any character of work or service in this state. Miss.Code Ann. § 13–3–57 (2000). As the claims of Internet Doorway are not based upon a contract with a Mississippi resident, the "contract prong" of the Mississippi long-arm statute cannot be the basis for personal jurisdiction in this action. However, Internet Doorway argues that Davis was "doing business" in Mississippi when she sent the unsolicited e-mail advertisement, and that the actions of Davis constitute a tort that was committed at least in part in Mississippi.

■ The general requirements for jurisdiction under the "doing business prong" of the Mississippi long-arm statute are that: "(1) the nonresident...must purposefully do some act or consummate a transaction in Mississippi; (2) the cause of action must either arise from or be connected with the act or transaction; and (3) the assumption of jurisdiction by Mississippi must not offend traditional notions of fair play and substantial justice." *Gross v. Chevrolet Country, Inc.*, 655 So.2d 873, 877 (Miss.1995)(citing *Rittenhouse v. Mabry*,

832 F.2d 1380, 1384 (5th Cir.1987)).[2] Under the facts of the case *sub judice,* when Davis allegedly transmitted the e-mail to a recipient or recipients in Mississippi, it was an attempt to solicit business for a particular web-site. Thus, Davis committed a purposeful act that occurred in Mississippi, just as if she had sent via United State Mail a letter to a Mississippi resident advertising a particular product or service. The Court further finds that although a nexus is not required between the act in Mississippi and the conduct complained of, such exists here. As for whether the exercise of personal jurisdiction would offend traditional notions of · fair play and substantial justice, this question will be answered in the second part of the Court's analysis in regard to whether the requirements of due process have been met.[3] Thus, at this point in the proceedings, the Court finds that Davis was "doing business" within the contemplation of the Mississippi long-arm statute.

■ Internet Doorway next asserts that *in personam* jurisdiction exists under the "tort" prong of the Mississippi long-arm statute. "Under the tort prong of the Mississippi long-arm statute, personal jurisdiction is proper if any element of the tort (or any part of any element) takes place in Mississippi." *Allred v. Moore & Peterson,* 117 F.3d 278, 282 (5th Cir.1997), *cert. denied,* 522 U.S. 1048, 118 S.Ct. 691, 139 L.Ed.2d 637 (1998). In addition, the Mississippi Supreme Court has stated that:

> [t]he tort is not complete until the injury occurs, and if the injury occurs in this State, then, under the...statute, the tort is committed, at least in part, in this State, and personam jurisdiction of the nonresident tort feasor is conferred upon the Mississippi court.

*Smith v. Temco,* 252 So.2d 212, 216 (Miss. 1971). Accordingly, Internet Doorway argues that there is personal jurisdiction under the tort prong of the long-arm statute as Mississippi is where the injuries allegedly suffered by Internet Doorway occurred.

Davis counters that under Mississippi law, the consequences of a tort are distinguishable from the injury caused by a tort. Davis is correct in that the Fifth Circuit has stated that "consequences stemming from the actual tort injury do not confer personal jurisdiction at the site or sites where such consequences happen to occur." *Allred,* 117 F.3d at 282. The court reasoned that "Mississippi does not permit *damages* to serve as a proxy for *injury* in the personal jurisdiction calculus. The concepts are distinct and we must endeavor not to conflate the existence of an injury-and hence the completed tort-with the presence of its economic consequences." *Id.* at 283 (emphasis in original). Therefore, the question before this Court is whether the injury allegedly suffered by Internet Doorway occurred in Texas, from

**2.** In 1991, the Mississippi legislature abolished the "nexus" requirement in order for a court to exercise *in personam* jurisdiction. *Gross,* 655 So.2d at 878. Thus, under the current version of the long-arm statute, a plaintiff need not demonstrate a connection between the act or transaction that occurred in Mississippi and the claims asserted in the law suit.

**3.** The Court is aware that the Mississippi Supreme Court has stated that the activities of a

non-resident defendant must be of "a continuing and substantial...nature that we regard [her] doing business here within the meaning and contemplation of [s]ection 13–3–57." *McDaniel v. Ritter,* 556 So.2d 303, 309 (Miss. 1989). However, this language seems to clarify the last portion of the "doing business" test as to whether the requirements of due process have been met. This issue will be discussed later in this Opinion.

where the e-mail was allegedly sent by Davis, or in Mississippi where it was received, opened, and read by a Mississippi resident or residents.

The United States District Court for the Northern District of Mississippi has addressed this general issue in *Lofton v. Turbine Design, Inc.*, 100 F.Supp.2d 404 (N.D.Miss.2000). There, the plaintiff, a resident of Mississippi, sued the defendants, all residents of Florida, for, among other torts, libel and slander, alleging that statements placed by the defendants on a web-site in Florida and read by residents of Mississippi constituted defamation. The question before that court was whether, in the context of defamation, the "injury," as opposed to the "consequences" of the tort, occurred in Florida or in Mississippi. The court held that personal jurisdiction did exist under the "tort" prong of the Mississippi long-arm statute, stating:

> [t]he plaintiffs have effectively argued that the torts of libel and slander are not complete until publication, and upon publication in Mississippi, the tort is complete and would satisfy the requirements of the Mississippi long-arm statute. The plaintiffs allege, with evidentiary support, that the defendants committed the torts of defamation, libel and slander, at least in part, through their activities in Mississippi. These activities include publishing the alleged defamatory information complained of on the Internet via [the defendant's] website, allowing access and publication within the State of Mississippi and among Mississippi residents. This is sufficient to establish a prima facie case of personal jurisdiction under the 'tort' prong of Mississippi's long-arm statute."

*Id.* at 409.

There are two important differences between the facts in *Lofton* and those *sub judice.* First, the medium of communication in *Lofton* was a web-site which is passive and must be accessed by the reader, whereas the medium in the instant case is an e-mail, which was actively sent to the recipient in hopes that the recipient would read its contents and patronize the website it was promoting. Second, the tort alleged in this cause of action is trespass to chattels as opposed to defamation. As for the first difference, the Court finds that the active as opposed to passive nature of e-mail weighs in favor of finding personal jurisdiction. In regard to the difference in torts, the question becomes when does the "injury" occur when an e-mail is sent that allegedly constitutes trespass to chattels.

Assuming the e-mail was sent by Davis from Texas, if the e-mail had never been received or "opened" by the Mississippi recipient, no injury would have befallen Internet Doorway in this forum. Accordingly, the tort was complete when the e-mail was opened by the recipient, not when it was transmitted by Davis. Therefore, the "injury" occurred in Mississippi, and the tort, as alleged, took place in part in Mississippi. Consequently, the difference in torts between that alleged in *Lofton* and that alleged in the case *sub judice* is of little import. For these reasons, the Court finds *Lofton* to be on point, and finds its reasoning persuasive. The Court chooses to follow its holding and finds that *in personam* jurisdiction exists in this case under the "tort" prong of the Mississippi long-arm statute.

■ Now that Internet Doorway has satisfied the first part of the analysis to determine whether personal jurisdiction exists, the Court must determine whether the exercise of *in personam* jurisdiction in the case *sub judice* would be violative of the due process rights of Davis. In order to comport with due process requirements, a non-resident must have "certain mini-

mum contacts with [the forum] such that the maintenance of the suit does not offend the traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). A defendant's "conduct in connection with the forum state must be such that he 'should reasonably anticipate being haled into court' in the forum state." *Latshaw v. Johnston,* 167 F.3d 208, 211 (5th Cir.1999) (citation omitted). The Fifth Circuit has given guidance in making such a determination stating:

> The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which the individual has established no meaningful "contacts, ties, or relations." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). Requiring that individuals "have fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign," *Shaffer v. Heitner,* 433 U.S. 186, 218, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683 (1977) (Stevens, J., concurring), the Due Process Clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Burger King,* 471 U.S. at 474, 105 S.Ct. at 2183, citing *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

*Dickson Marine, Inc. v. Panalpina, Inc.,* 179 F.3d 331, 336 (5th Cir.1999).

When the activities that establish personal jurisdiction are also the basis of the suit in question, a " 'relationship among the defendant, the forum and the litigation' is the essential foundation of in personam jurisdiction." *Id.* Contacts of this type allow a forum to invoke "specific jurisdiction." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). However, when the contacts have nothing to do with the subject matter of the litigation, the forum is said to exercise "general jurisdiction." *Id.* at 414 n. 9, 104 S.Ct. 1868. Under such circumstances, "[d]efendants can be subject to general in personum jurisdiction if they have 'continuous and systematic' contacts with the forum state." *Dickson Marine,* 179 F.3d at 336 citing *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 445, 72 S.Ct. 413, 96 L.Ed. 485 (1952).

Whether the Court exercises specific or general jurisdiction in this matter is important. As the Court noted earlier, in regard to the "doing business" prong of the Mississippi long-arm statute, the Mississippi Supreme Court has stated that the activities of a non-resident defendant must be of "a continuing and substantial...nature that we regard [her] doing business here within the meaning and contemplation of [s]ection 13–3–57." *McDaniel v. Ritter,* 556 So.2d 303, 309 (Miss.1989). The words "continuing" and "substantial" echo the language "continuous" and "systematic" which is used to determine whether due process has been met when a court exercises general as opposed to specific *in personam* jurisdiction. Accordingly, if the Court finds that no connection exists between the complained of event and the contacts with the forum and exercises general jurisdiction, whether Davis is subject to the "doing business" prong of the Mississippi long-arm statute depends upon whether her contacts with Mississippi were "continuing" and "substantial."

■ The Court finds that the exercise of personal jurisdiction in this case would invoke the specific rather than the general

jurisdiction of this Court as the complained of e-mail is the contact with Mississippi that is used to establish personal jurisdiction. Indeed, even a single contact can support specific jurisdiction. *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir.1987). Therefore, the Court need not assess either for purposes of the "doing business" prong of the Mississippi long-arm statute or Fourteenth Amendment due process whether Davis' contacts with Mississippi were "continuing" and "substantial" or "continuous" and "systematic." Thus, in order to assess whether the exercise of *in personam* jurisdiction by this Court would satisfy due process requirements, the Court need only consider whether Davis has the necessary minimum contacts with Mississippi, and whether the maintenance of this suit in this Court would offend the traditional notions of fair play and substantial justice.[4]

■ As stated above, specific *in personam* jurisdiction can be supported by a single contact. Accordingly, the Court finds that Davis' act of sending the complained of e-mail to a Mississippi resident is that single contact, and Davis has the requisite "minimum contacts" with Mississippi. "Once a plaintiff has established minimum contacts, the burden shifts to the defendant to show the assertion of jurisdiction would be unfair." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir.1999). Furthermore, in order to "show that an exercise of jurisdiction is unreasonable once minimum contacts are established, the defendant must make a 'compelling case' against it." *Id.* Accordingly,

the Court now turns to the "traditional notions of fair play and substantial justice" analysis. In order to make this determination, generally, a court weighs: (1) the burden on the defendants; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interest of the interstate system in the most efficient resolution of disputes; and (5) the collective interests of states in furthering important substantive social policies. *Id.* After considering these factors, the Court finds that they are neutral and do not favor one party over the other. In addition, while Davis has made the allegation, she has not met her burden in showing how the exercise of *in personam* jurisdiction by this Court would be unfair.

Assuming for the purposes of the determination of the Motion to Dismiss that the allegations against Davis are true, she apparently manipulated this e-mail to show that it was being sent from an Internet Doorway account. She then sent the e-mail to persons presumably all over the country and the world. By doing this, Davis had to have been aware that the e-mail would be received and opened in numerous fora, including Mississippi. Accordingly, the Court finds that it would be neither "unfair" nor "unjust" to subject her to personal jurisdiction in Mississippi. By sending an e-mail solicitation to the far reaches of the earth for pecuniary gain, one does so at her own peril, and cannot then claim that it is not reasonably foreseeable that she will be haled into court in a distant jurisdiction to answer for the

---

4. The Court is aware of the decision of the Fifth Circuit in *Mink v. AAAA Development LLC*, 190 F.3d 333 (5th Cir.1999) in which the Court addressed whether the defendant's maintenance of a web-site that is accessible in the forum state via the Internet, where the defendant has no other contacts with the forum state, can be the basis for *in personam* jurisdiction. The court used a sliding scale based upon the level of interaction between the web-site and the user. While this analysis works well in the context of a web-site, the Court finds that it is inapplicable to the case *sub judice* as the alleged contact is not via an Internet web-site, but through an e-mail actively sent by Defendant.

ramifications of that solicitation. For these reasons, the Court finds that the exercise of *in personam* jurisdiction over Defendant Davis is appropriate, and the Motion to Dismiss is denied.

### III. Conclusion

Based on the reasons set forth in this Opinion and Order:

IT IS THEREFORE ORDERED that the Motion to Dismiss of Defendant Davis for Lack of Personal Jurisdiction [11–1] is denied.